UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATHLEEN HOWARTH, as personal representative of the Estate of Brian Howarth; and KATHLEEN HOWARTH, individually,<br><br>Plaintiffs,<br>vs.<br><br>GORDON LUTHER, M.D., an Individual,<br><br>Defendant. | Case No. 2:14-CV-00312-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION FOR RULING ON ALLOCATION OF FAULT (Dkt. 91)** |

Pending is Plaintiff's Motion for Ruling on Allocation of Fault (Dkt. 91). Having carefully considered the record and the parties' briefing, heard oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

Plaintiff Kathleen Howarth brings this action both in her individual capacity and as personal representative of the estate of her deceased husband Brian Howarth. Compl. 1 (Dkt. 1). On January 14, 2014, Brian reported to the Boundary County Detention Facility (the "Jail") to be held for sentencing related to a DUI. *Id.* ¶ 3.3. On January 20, Brian requested medical care, listing his symptoms as sore throat, breathing aches, muscle aches, ear aches, and cough. *Id.* ¶ 3.4. On January 23, after Brian had not improved under the care of the Jail's contract doctor, Brian was transported to the Emergency Department at Boundary Community Hospital (the "Hospital"). *Id.* ¶¶ 3.5, 3.6. Dr. Gordon Luther, M.D., examined Brian, diagnosed him with bronchitis with bronchospasm, treated him with a DuoNebulizer inhalation, and prescribed azithromycin and albuterol. *Id.* ¶¶ 3.8, 3.9. Dr. Luther instructed Brian to "contact the doctor

**MEMORANDUM DECISION AND ORDER – 1**

immediately" if he developed a fever, increased wheezing, chest pain, or severe shortness of breath. *Id.* ¶ 3.9. Thereafter, Brian was transported back to the Jail at approximately 7:30 a.m. on January 23. *Id.* ¶ 3.10. Brian's condition deteriorated throughout the day. *Id.* ¶¶ 3.10–3.13. By approximately 5:30 a.m. on January 24, a Jail detention officer decided that Brian needed to return to the hospital but that officer could not immediately transport Brian because he was the only detention officer on duty. *Id.* ¶ 3.14. At about 7:08 a.m., the same detention officer entered Brian's cell after observing that Brian had not changed position since the last observation some 18 minutes earlier. *Id.* ¶ 3.15. The detention officer could not rouse Brian, so he radioed for assistance. *Id.* Detention officers performed CPR on Brian until an ambulance arrived around 7:24 a.m. *Id.* ¶¶ 3.17, 3.18. Brian was pronounced dead at 7:37 a.m. on January 24, 2014. *Id.* ¶ 3.18. The Spokane County Medical Examiner concluded that Brian died from bilateral pneumonia. *Id.* ¶ 3.19.

In her Complaint, Howarth alleges that the Hospital, Western Medical Associates, and Dr. Luther are liable for negligence, gross negligence, recklessness, and negligent infliction of emotional distress. *Id.* ¶¶ 4.1–4.6. She alleges that the detention officers who had personal contact with Brian are liable for Idaho Tort Claims Act violations, negligence, gross negligence, recklessness, negligent infliction of emotional distress, constitutional violations under 42 U.S.C. § 1983, and for Brian's premature death. *Id.* ¶¶ 4.7–4.11, 4.18. She alleges that Boundary County Sheriff Greg Sprungl, the Boundary County Sheriff's Office ("BCSO"), the Jail, and Boundary County itself are liable for negligence, gross negligence, negligent infliction of emotional distress, and constitutional violations under 42 U.S.C. § 1983. *Id.* ¶¶ 4.12–4.18, 4.25.

Defendant Western Medical Associates was dismissed by stipulation on August 4, 2015. (Dkts. 27, 28.) Defendant Boundary Community Hospital was dismissed by stipulation on April 16, 2018 (Dkts. 100, 116), after one claim against it had previously been dismissed on February 8, 2016 (Dkts. 45, 50).

In November 2015, the Jail Defendants – Boundary County, BCSO, the Jail, Sheriff Sprungl, and the detention officers – moved for summary judgment. (Dkt. 29.) After briefing and argument, this Court ruled against the Jail Defendants on their claim of immunity from suit.[1] (Dkt. 60.) The Jail Defendants appealed (Dkt. 62), and while the appeal was pending the Jail Defendants and Howarth settled. (Dkt. 79) By stipulation, the Jail Defendants were then dismissed from the case. (Dkts. 79, 81, 85, 86.)

Howarth's pending claims against the remaining defendant, Dr. Luther, are set for trial June 4, 2018. (Dkt. 89.) Howarth now moves for a ruling on allocation of fault, seeking certainty on whether the jury will be instructed (and thereby permitted if the jury is persuaded to do so) to allocate fault between Dr. Luther and any dismissed defendant. (Dkt. 91.) Oral argument was heard on the motion on March 8, 2018. (Dkt. 99.)

## **DISCUSSION**

Howarth frames the question as whether Dr. Luther, the only remaining defendant,[2] is entitled to contend at trial that the dismissed defendants are at-fault parties subject to an

---

[1] The Jail Defendants' Motion for Summary Judgment was granted in part and denied in part, but the full contours of that decision are not relevant here.

[2] Dismissed Defendant Boundary Community Hospital was still a party to the case when the instant motion was briefed and oral argument was heard. Howarth's arguments thus refer to the defendants, plural. In light of the Hospital's dismissal, Dr. Luther is the only remaining defendant. Thus, this memorandum decision treats the arguments as applying only to Dr. Luther.

allocation of fault. Mem. ISO Mot. for Ruling on Allocation of Fault 2 (Dkt. 91-1). She argues that the defendants should not be able to use such an "empty chair" defense for several reasons. First, she argues that liability for constitutional violations under 42 U.S.C. § 1983 is joint and several, so no offset or apportionment is appropriate. *Id.* at 2–4. Second, she argues that conduct amounting to deliberate indifference cannot be compared to negligent conduct. *Id.* at 4–7. Third, she argues that the public policy behind 42 U.S.C. § 1983 affords protections greater than state-law wrongful death claims. *Id.* at 7–11. Finally, she argues that Dr. Luther should be precluded from raising the affirmative defense of others' fault. *Id.* at 11–13.

1. **Idaho Law Allows a Defendant to Seek to Apportion Damages with Respect to Settled Parties.**

As an initial matter, the Court will consider Dr. Luther's contention that he is entitled to seek to apportion fault or damages. If he is so entitled, any arguments Howarth raises must be examined in the context of such an entitlement. If he is not so entitled, then no further analysis or discussion is necessary.

Dr. Luther argues that Idaho Code section 6-802 allows a party to seek an apportionment instruction. That statute provides:

> The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence or comparative responsibility attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence or comparative responsibility attributable to the person recovering. Nothing contained herein shall create any new legal theory, cause of action, or legal defense.

I.C. § 6-802. The Idaho Supreme Court has clarified that this statute applies to all parties to the transaction rather than merely to all parties to the lawsuit:

> It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit and whether or not they can be liable to the plaintiff or to the other tortfeasors either by operation of law or because of a prior release. The reason for such (a rule) is that true apportionment cannot be achieved unless that apportionment includes all tortfeasors guilty of causal negligence either causing or contributing to the occurrence in question, whether or not they are parties to the case.

*Pocatello Indus. Park Co. v. Steel West, Inc.*, 621 P.2d 399, 403 (Idaho 1980) (citations and quotation marks omitted).

Howarth contends the statutory scheme contained in section 6-802, in combination with the limitation on noneconomic damages imposed by Idaho Code section 6-1603, inequitably diminishes her potential recovery by diluting her claim. Reply Mem. ISO Mot. for Ruling on Allocation of Fault 2 (Dkt. 95.) She suggests that the fact she sustained damages beyond those recognized in tort law is lost to her. *Id.* Such arguments would, perhaps, more properly be directed at the Idaho Legislature than this Court, which is bound to follow applicable law. Idaho's approach to comparative negligence plainly allows a defendant to assert that an absent party is liable for some or all of the alleged fault or damages. The Court agrees at the outset with Dr. Luther that he is entitled to seek apportionment, unless Howarth can show why apportionment should not apply in the instant circumstances.

**2. The Law Surrounding 42 U.S.C. § 1983 Does Not Apply to This Issue.**

Howarth's first and third arguments both rely on the law related to so-called "1983 claims" which refer to claims for violation of constitutional rights pursued under 42 U.S.C. § 1983. That statute affords a remedy for constitutional deprivations committed by a defendant acting under color of law. Howarth sued the Jail Defendants under § 1983. She did not sue Dr. Luther under § 1983.

**MEMORANDUM DECISION AND ORDER – 5**

Howarth argues that Brian's death, which is the basis for several of her claims, is an indivisible injury. Mem. ISO Mot. for Ruling on Allocation of Fault 2 (Dkt. 91-1). Accordingly, she argues, the Jail Defendants would have been jointly and severally liable on her § 1983 claim and no apportionment or offset would have been proper. *Id.* at 2–3. She cites *Hazle v. Crofoot*, 727 F.3d 983 (9th Cir. 2013) and *Hoa v. Riley*, 78 F.Supp.3d 1138 (N.D. Cal. 2015) in support of this argument.

In *Hazle*, an atheist had his parole revoked and he was imprisoned for an additional 100 days when he refused to participate in a residential drug treatment program with mandatory religious components. 727 F.3d at 986. He sued under § 1983, seeking damages and injunctive relief for the deprivation of his First Amendment rights.[3] *Id.* The district judge held as a matter of law that the state defendants were liable for the violation Hazle alleged. *Id.* But the jury, addressing only the issue of damages, awarded Hazle zero damages. *Id.* The Ninth Circuit panel held that the district court erred in instructing the jury to determine whether liability should have been apportioned because "the question of whether an injury is capable of apportionment is a legal one to be decided by the judge, not the jury." *Id.* at 995. It also held that "the district judge should have concluded, as a matter of law, that Hazle was entitled to compensatory damages and that defendants were jointly and severally liable for his injuries." *Id.* at 994. The court further held that "Hazle's injury from his term of unlawful imprisonment—as well as any resultant emotional distress—was clearly indivisible, in that the concurrent actions of all defendants were necessary in order to return Hazle to prison." *Id.* at 995.

---

[3] Hazle also filed a taxpayer injunction claim under state law, which was dismissed on summary judgment. *Id.* at 989. Thus, the case's treatment of joint and several § 1983 liability was not in the context of how other claims in the same case should or must be treated.

The plaintiff in *Hoa* was a prisoner who, as part of a prison work program, assisted commercial vehicles arriving at the prison. 78 F.Supp. 3d at 1143. Hoa was injured when a commercial truck trapped and crushed him as it backed up a loading ramp. *Id.* Hoa sued, among others, various prison officials under § 1983 and the truck's driver and owner under state law negligence theories. *Id.* at 1143–1144. Relevant here, the prison defendants cross-claimed for equitable indemnification, contribution, and declaratory relief against the truck defendants.[4] *Id.* The truck defendants moved to dismiss the cross-complaint, arguing that § 1983 does not permit claims for indemnification or contribution and that the prison defendants' state-law claims for indemnification or contribution were precluded by the California Workers Compensation Act. *Id.*

The federal district court in *Hoa* extensively cited Ninth Circuit precedent that there is no right of indemnification under § 1983. *Id.* at 1145–1147. The court further concluded that § 1983 likewise provides no right of contribution. *Id.* at 1147. Next, the court rejected the prison defendants' argument that 42 U.S.C. § 1988 allowed it to apply state law on contribution or indemnification. *Id.* at 1147–1148. Finally, even though California state law provided for a right of contribution or indemnification, the court nonetheless refused to apply such state law because doing so would conflict with the goal of deterrence that is imbued into § 1983. *Id.* at 1148, 1154. "Allowing a right of contribution or indemnification in a case like this would allow a deliberately indifferent defendant to offset his liability by shifting it onto a merely negligent tortfeasor." *Id.* at

---

[4] Thus, *Hoa* presents facts that more closely mirror the instant case than those in Hazle – but its posture is nonetheless distinguishable. In *Hoa*, the state actor defendants sought to apportion some of their § 1983 liability to the non-state actor defendants. By contrast, here the non-state actor defendants seek to apportion some of their *state law liability* to the state actor defendants whose alleged liability was premised both on § 1983 and on state-law claims.

1154. Thus, a defendant with a greater degree of intentionality would be able to shift liability onto a co-defendant with a lesser degree of intentionality.

Howarth relies upon both *Hoa* and *Hazle,* but the Court finds both cases inapposite to the present circumstances. At issue here is whether a non-state actor defendant can present evidence that absent defendants – who happen to have been state actor defendants on a § 1983 claim at an earlier point in the case – are, or may be, liable for part of the plaintiff's injuries. Neither *Hazle* nor *Hoa* dealt with such a circumstance. *Hazle* addressed only § 1983 claims, and this Court does not read *Hazle's* treatment of joint and several liability so broadly as to apply in a context where a § 1983 claim is joined with state-law claims. *Hoa* did present a case joining § 1983 and state-law claims, but the posture was exactly backward from the present case. That is, the § 1983 defendants in *Hoa* sought to shift liability to the non-§ 1983 defendants; here, the opposite is true, as the non-§ 1983 defendant seeks to shift liability to the § 1983 defendants. In other words, Dr. Luther, the remaining defendant, does not seek to shift liability to a co-defendant with a lesser degree of intentionality; rather, he seeks to shift liability to a co-defendant with an equal, or greater, degree of intentionality. Thus, neither the case law addressing apportionment of culpability in § 1983 claims, nor the public policy informing it, speak to the issue here. The Court is not persuaded by Howarth's arguments to the contrary.

### 3. There Is No Barrier to Comparing the Jail Defendants' Actions with Dr. Luther's Actions.

Howarth argues that "conduct amounting to deliberate indifference cannot be compared to negligent conduct," citing various decisions in other jurisdictions holding that intentional and negligent conduct are fundamentally different and should not be apportioned together. Mem. ISO Mot. for Ruling on Allocation of Fault 4–7 (Dkt. 91-1). The Court is not persuaded, however,

that Dr. Luther – who was sued for negligence claims – should be prevented from seeking to apportion liability. Significantly, Howarth sued the Jail Defendants on the deliberate indifference standard (alleging the Jail Defendants acted "with deliberate and callous indifference"), but also in negligence (alleging they acted with "negligence and gross negligence under the law of the State of Idaho"). Compl. ¶¶ 4.18, 4.21 (Dkt. 1). Moreover, her claim for negligent infliction of emotional distress alleges that the Jail Defendants engaged in "negligent conduct." *Id.* ¶ 4.25.

To support her position, Howarth submitted a copy of a "Mediated Settlement Agreement Between Plaintiff and Jail Defendants Only." McCrea Decl. Ex. A (Dkt. 91-2 pp. 3–5) (the "Agreement"). The Agreement recites details of the settlement between those parties, pertaining to "Plaintiff's claim of constitutional deprivation/deliberate indifference under 42 U.S.C. § 1983 against the Jail Defendants." *Id.* ¶ 4. Under the Agreement, Howarth received "payment for the alleged constitutional deprivation, decedent's pre-death pain and suffering," as well as for Plaintiff's attorney fees through a specified date. *Id.* ¶ A. As partial consideration, Howarth signed a stipulation to dismiss "Plaintiff's claims against the Jail Defendants," which was done. *Id.* ¶ B; Dkts. 79, 85. The Agreement does not contain an admission by the Jail Defendants of liability for deliberate indifference, negligence, or any other culpable conduct. Rather, consistent with the usual nature of such agreements, there is no admission by the Jail Defendants of any culpability, much less any differentiation of what that culpability might be. Whatever claims were made by Howarth against the Jail Defendants, to include claims of negligence, were settled.

The nature of the Agreement is not a legal bar to the right of a defendant who did not settle – here, Dr. Luther – from presenting evidence of other defendants' conduct as a means of

defending himself against Howarth's claim that his conduct was negligent and a proximate cause of Mr. Howarth's death, consistent with the express language of Idaho Code section 6-802.

### 4. Dr. Luther Has Not Waived and is not Estopped from Asserting the Affirmative Defense of Others' Fault.

Dr. Luther's Answer raised the defense of comparative fault:

> That percentage of causative fault of Dr. Luther, if any, should be compared with that percentage of causative fault of any other person or entity named as a defendant in this action, so that Dr. Luther is liable, if at all, only for that several share of causative fault attributed to him.

Ans. of Gordon Luther, M.D. 6 (Dkt. 5). In her written discovery, Howarth asked this question:

> If it is your contention that the Plaintiff's injuries were caused in whole or in part by some person or persons other than any agent or employee of yours, please identify each such person fully, giving such person's name, address, occupation, title, and describe the facts giving rise to such contention.

McCrea Decl. Ex. B (Dkt. 91-2 pp. 8–9). The answer was: "Dr. Luther has not raised the affirmative defense of the fault of others." *Id.* at 9.

Howarth argues that Dr. Luther should not be permitted to apportion liability because his interrogatory answer disclaimed such an intention. Mem. ISO Mot. for Ruling on Allocation of Fault 11–13 (Dkt. 91-1). Howarth contends she relied on this representation while negotiating the above-referenced Agreement with the Jail Defendants, and waiver, abandonment, or estoppel should apply to preclude Dr. Luther from asserting this defense at trial. *Id.*

Dr. Luther says the statements are entirely consistent: "Dr. Luther did not raise an *additional* affirmative defense seeking to compare fault of *other non-party individuals* and his answer to the Interrogatory reflects that intent." Dr. Luther's Mem. in Resp. to Plf.'s Mot. for Ruling on Allocation of Fault 8 (Dkt. 92) (emphases added). That is, he asks the Court to read his interrogatory answer as indicating that "others" means persons or entities besides the other

defendants who were already a party to this lawsuit. He also says that ten months after answering the interrogatory, he disclosed an expert report by Dr. Andrew Sullivan opining that if Brian Howarth had been returned to the hospital by the jail staff, as Dr. Luther had instructed to do if his condition worsened, Brian's death could have been avoided. *Id.* at 8–9. Given the disclosure of that expert opinion, Dr. Luther argues, Howarth could not have reasonably relied on the alleged waiver of the defense evidenced by Dr. Luther's interrogatory response. *Id.* at 9. Finally, Dr. Luther contends that presenting evidence at trial "regarding the events that transpired at the jail will not impose any unfair detriment to Plaintiff. Dr. Luther is entitled to present evidence regarding the proximate cause of Howarth's injuries, and a chief component of that evidence involves Howarth's time in the jail and his interactions with the Jail Defendants." *Id.* at 10. Dr. Luther points out that "[t]his evidence logically lends itself to a special verdict apportioning fault and damages and Plaintiff cannot reasonably claim that Dr. Luther's intent to apportion damages comes as a surprise under the circumstances."[5] *Id.*

There is a problematic landscape under the liability issues of this case created by this dispute over whether Dr. Luther should be precluded, because of his interrogatory answer, from presenting evidence at trial about who did what, and what happened as a result, in the timeline leading up to Brian Howarth's death. Some of that is attributable to an arguable lack of precision about the subject matter in the discovery and discovery responses. On one hand, Dr. Luther's Answer invokes the right to ask the jury to compare the relative negligence of all defendants, *i.e.*,

---

[5] Further, by Howarth's own account, Brian passed away almost exactly 24 hours after Dr. Luther discharged him with instructions to "contact the doctor immediately" if his condition worsened. Brian spent all the intervening time in the custody of the Jail. Compl. ¶¶ 3.9, 3.10, 3.18 (Dkt. 1).

a defense of comparative negligence.[6] Both federal and state rules of procedure require a party to affirmatively state any "avoidance or affirmative" defense when responding to a Complaint. *See* FED. R. CIV. P. 8(c), IDAHO R. CIV. P. 8(c)(1)(D). But, his interrogatory answer seems to contradict his intention to rely upon comparative negligence. However, the interrogatory is not directed specifically at the affirmative defense (in the form of a contention interrogatory specifically focused upon the affirmative defense), and the answer therefore does leave room for the ambiguous response that Dr. Luther had "not raised the affirmative defense of the fault of others." Clearly, he raised such a defense in his Answer. The question is whether or not he abandoned that defense as a product of his interrogatory answer.

It is apparent that Dr. Luther's interrogatory answer left room for ambiguity and it could have been more precisely phrased. But it came in the frame of the affirmative defense previously having been raised in the Answer and the interrogatory not having been specifically directed at that defense. In addition, Dr. Luther made an expert witness disclosure which contained an opinion directly blaming the Jail for what transpired with Mr. Howarth. Such an opinion is not surprising in the context of the facts of this case – meaning, it is not surprising that the treating physician would contend that the discharge instructions were not followed, and as described *supra* Howarth's Complaint contains allegations of negligence against the Jail Defendants. Yet, the record here shows no attempt by Howarth to seek clarification of the interrogatory answer, nor any attempt by Dr. Luther to be more precise. If there was any equipoise in the matter along

---

[6] Obviously, this is consistent with the language of Idaho Code § 6-802: "The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence or comparative responsibility attributable to each party..."

the way, it was that each party was at some risk for not having clarified the issue more precisely. In other words, Howarth was at risk if she were to make decisions on the assumption that Dr. Luther would not be permitted to put forward proof or argument of comparative fault, notwithstanding the affirmative defense in the Answer and the expert disclosure. And, correspondingly, Dr. Luther was at risk of not being permitted to put forward proof or argument of comparative fault, given the nature of his interrogatory answer.

There is fodder for both sides of this dispute, as described, but the Court is persuaded on balance that Dr. Luther's arguments on this issue should prevail. The record viewed on balance does not convince the Court that Dr. Luther abandoned, waived, or is estopped from continuing to rely upon the affirmative defense at issue. Further, the Court is not persuaded that Howarth is prejudiced on the particular facts of this case, and permitting the defense to remain is consistent with the general tilt of the rules of procedure which are to be "construed, administered, and employed … to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. That decision is, of course, limited to the facts of this case and the exercise of the Court's discretion upon the factors involved.

Further, such a ruling is consistent with Idaho state law upon the subject, to wit, "[t]he court may, and when requested by any party shall, direct the jury to find separate special verdicts" apportioning fault and damages. I.C. § 6-802. The statute does not frame the right to seek apportionment as an affirmative defense. Nor does it impose any time-based or other limitations on how or when a party may make such a request. Moreover, the statute expressly permits an apportionment instruction even when no party makes such a request.

**MEMORANDUM DECISION AND ORDER – 13**

Finally, Howarth closes her reply brief on the instant motion by saying that "the jury should be instructed on proximate cause and their obligation to assess damages against Dr. Luther based on the extent to which his conduct brought about the decedent's death." The Court agrees with this statement; however, an apportionment instruction and corresponding special verdict are entirely consistent with that end. An apportionment instruction does not interfere with the jury's duty to properly "assess damages against Dr. Luther *based on the extent to which his conduct brought about the decedent's death.*" (Emphasis added.)

## CONCLUSION

Dr. Luther is entitled to present evidence and argument at trial that fault and damages for Howarth's claims should be apportioned to the Jail Defendants.

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Howarth's Motion for Ruling on Allocation of Fault (Dkt. 91) is **DENIED** to the extent that it seeks an order from this Court prohibiting Dr. Luther from presenting evidence and argument at trial that fault and damages for Howarth's claim should be apportioned to the Jail Defendants.



DATED: April 26, 2018

_____
Honorable Ronald E. Bush
Chief U.S. Magistrate Judge