UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATHLEEN HOWARTH, as personal representative of the Estate of Brian Howarth; and KATHLEEN HOWARTH, individually,<br><br>    Plaintiffs,<br><br>vs.<br><br>GORDON LUTHER, M.D., an Individual,<br><br>    Defendants. | Case No. 2:14-CV-00312-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANT GORDON LUTHER M.D.'S MOTION IN LIMINE (Dkt. 121)**<br><br>**PLAINTIFFS' MOTIONS IN LIMINE (Dkt. 123)** |

Pending are (1) Defendant Gordon Luther M.D.'s Motion in Limine (Dkt. 121), and (2) Plaintiffs' Motions in Limine (Dkt. 123). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order resolving Defendant's Motion in Limine and partially resolving Plaintiffs' Motions in Limine. A subsequent decision will resolve the balance of Plaintiffs' Motions in Limine.

**A.      Defendant Gordon Luther M.D.'s Motion in Limine (Dkt. 121)**

Defendant moves the Court for an order prohibiting Plaintiffs from offering the following evidence: (1) Exhibit 6 (autopsy photographs), (2) Exhibits 9a-9e (lung diagrams), and (3) Exhibits 10a-10h (pre-death photographs).

    1.      Exhibit 6 (Autopsy Photographs)

Defendant contends that both the number and nature of the autopsy photographs that have been proposed in Plaintiffs' Exhibit 6 are irrelevant and prejudicial. Defendant further contends that such photographs were not produced to Defendant as part of the initial disclosures required

under Rule 26(a) and therefore Plaintiffs should be precluded from admitting such photographs under Rule 37(c).

Plaintiffs contend that the Defendant did not request production of trial exhibits in written discovery. Plaintiffs also say that they produced a complete copy of the autopsy report in discovery, but then say that the copy they first received did not contain the photographs which were then obtained in a follow-up request to the Medical Examiner's office.

From the information available to the Court, the Court concludes that the photographs were *not* produced to the Defendant during the discovery process, even though the remainder of the report was produced. The Court also concludes that many, if not most, of the photographs depict something other than the lungs and dissected sections of the lungs.

The Court agrees with Defendant that the autopsy photographs which depict post-mortem images of something other than the lungs and lung tissue have only a remote, if any, evidentiary value to this case. Further, the Court finds that any evidentiary value that might exist in such photographs is outweighed by the gruesomeness of such images and the highly prejudicial impact that such images would have on the mind of the jurors as they consider how to decide the case. Therefore, the Court grants the motion in limine as to the photographs which do not depict the lung or dissected sections of the lung tissue. But the relevance of those photographs that *do* depict the lung or dissected sections of the lung tissue is not remote, and the danger of prejudice as to such photographs is much less pronounced.[1]

---

[1] The Plaintiffs indicated in their response to Defendant's motion in limine on this subject that they intended only to offer ten of the 60 total photographs, each of which was duplicated in the written response and each of which, according to Plaintiffs, show "the state of Howarth's lungs." *Mem. in Opp'n to Def.'s Mots. in Limine* 1 (Dkt. 129). It is these ten images that the Court rules in this Order *can* be utilized at trial.

However, Defendant contends that none of the photographs was produced under Rule 26(a), and therefore should be excluded under Rule 37(c). Rule 26(a), of course, imposes the fundamental initial disclosure requirement upon every party, to include (in subpart (ii)) " a copy…of all documents…that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." In turn, Rule 37(a) requires that a party failing to provide information required by Rule 26(a) "is not allowed to use that information…at a trial, unless the failure was substantially justified or is harmless."

There is no particular justification offered by Plaintiffs for the failure to provide the photographs, other than the reference to the fact that the photos were not provided to Plaintiffs' counsel with the report, and a "follow-up" request had to be made. Hence, the circumstances are very similar to those presented by Plaintiffs' motion to preclude evidence from Defendant seeking to allow the jury to consider the possible fault of others in causing Howarth's death. In other words, similar to the Plaintiffs' circumstance of being aware that the Defendant was contending others were to blame, notwithstanding the content of a possibly ambiguous written discovery response, the Defendant was aware from having received the autopsy report *sans* photographs that there were, in fact, photographs (as is always the case with an autopsy) that would have accompanied the report, but made no specific request for the same. Plaintiffs should have supplemented their earlier disclosures with the photographs, but on these facts the Court is persuaded that the Defendant reasonably could have acted to fill that gap, much as Plaintiffs reasonably could have acted to settle any potential uncertainty about the Defendant's intentions regarding the potential blame to be borne by other persons. Further, the Court is persuaded that

the failure to produce the photographs of the lungs is harmless in this case, where the medical examiner who performed the autopsy will testify, will have first-hand knowledge of the condition of the lungs and the appearance of the lung tissue, and where the photographs will help the jury to understand his testimony, including any cross-examination.

The Court would rule the other way, however, as to the remainder of the 60 photographs proposed by Plaintiffs in Exhibit 6 and indicates so here for the benefit of counsel, even though it appears that Plaintiffs have indicated they do not intend to seek admission of any of the other 60 photographs. Defendant's motion in limine is denied as to the ten autopsy photographs depicting the lung or dissected sections of the lung tissue.

2.     Exhibits 9a-9e (Lung Diagrams)

The proposed lung diagrams are appropriate illustrative exhibits, for purposes of testimony only. The Court will permit their use, provided a proper foundation as to what the diagrams depict and as to the purpose of illustration, is made.

3.     Exhibits 10a-10h (Pre-Death Photographs)

The Court is satisfied that as to these photographs, the requirements of Rule 26(2) and 37(c) combine to require the granting of Defendant's motion in limine. The photographs, described as photographs of the Howarths' wedding, honeymoon, and a fishing photograph are described by Plaintiffs as needed to allow the jury to understand what Howarth was "capable of bestowing" in the relationship he had with his wife. *Mem. in Opp'n to Def.'s Mots. in Limine* 5 (Dkt. 129).[2]

_____

[2] Plaintiffs state that the exhibits "do not constitute substantive evidence and will not be presented for the purpose of proving a fact in issue." *Id.* However, they cannot reasonably be considered illustrative evidence, and if they are not presented for the purpose of proving a fact in

These photographs, like the autopsy photographs, are subject to the requirements of Rule 26(a) and 37(c). Unlike the autopsy photographs, there is no reason for Defendant to have been aware of their existence prior to their designation as a trial exhibit, nor would it be harmless to allow their introduction. Plaintiffs describe a series of turnovers in their office paralegal staff as the reason for any failure to produce such photographs – stating that four different paralegals have been assigned to the case in its lifetime; that "their respective filings have not been consistent;" and along with a report that the paralegal assigned to the case in 2015 and 2016 was requested by counsel to make copies of the photographs and provide them to defense counsel, and that particular paralegal is no longer employed at the firm.

The court assumes here, from what has been placed before it, that, in fact, the photographs were *not* produced to Defendant's counsel. The question then is whether the circumstances "substantially justified" the failure to produce the photographs to the Defendant. The answer is inescapably no, as to say otherwise would be to say a party's ability to fairly prepare for trial and defend against claims or defenses of an opposing party depends in the first instance upon the reliability and dependability of the support staff of the opposing party's law firm. The Court will not draw that link, even though the Court recognizes that the day-to-day operation of a law office presents many challenges in ensuring that what needs to be done, is done, and done when it needs to be done.

Accordingly, Defendant's motion in limine is granted as to Exhibits 10(a) through 10(h).

---

issue then they have no relevance. The purpose seems clear enough – they would be offered to give visual proof of the fact of a relationship in which Brian Howarth provided support and companionship to Kathleen Howarth.

**B.     Plaintiffs' Motions in Limine (Dkt. 123)**

Plaintiffs move the Court for an order prohibiting Defendant from placing into evidence, referencing, implying, insinuating, or otherwise communicating to the jury any of the following: (1) a "malpractice crisis," (2) Dr. Luther's reputation, (3) Dr. Luther's finances, (4) death benefits paid to Plaintiffs, (5) contingent fee arrangement, (6) jail phone call transcript, (7) Brian Howarth's criminal history, (8) title of Bonner's Ferry and Plains residences, (9) amount of settlement with previously-named Defendants, (10) extrinsic statement of Plaintiffs' expert, Dr. Cummins, made in a 2010 deposition, and (11) expert testimony from Troy Geyman, M.D., and Chuck Newhouse, M.D.

1.     <u>Motion No. 1: A "Malpractice Crisis"</u>

This motion is granted, subject to possible reconsideration if the proof at trial opens the door as to the subject.

2.     <u>Motion No. 2: Dr. Luther's Reputation</u>

This motion is granted, subject to possible reconsideration if the proof at trial opens the door as to the subject.

3.     <u>Motion No. 3: Dr. Luther's Finances</u>

This motion is granted, subject to possible reconsideration if the proof at trial opens the door as to the subject.

4.     <u>Motion No. 4: Death Benefits Paid to Plaintiffs</u>

This motion is granted, subject to possible reconsideration if the proof at trial opens the door as to the subject.

5.     <u>Motion No. 5: Contingent Fee Arrangement</u>

This motion is granted, subject to possible reconsideration if the proof at trial opens the door as to the subject.

6.      Motion No. 6: Jail Phone Call Transcript

Plaintiffs ask that the Court preclude any use of a transcript made of a recorded telephone conversation between Kathleen Howarth and Brian Howarth, on January 19–20, 2014 while Brian was incarcerated at the Bonner County Jail. Three arguments are made by Plaintiffs, which the Court will consider in turn.

First, Plaintiff contends that the transcript must be authenticated in the first instance. The Court agrees, and if the transcript is offered at trial (subject to the rulings which follow here) and an objection is made on foundation grounds, then the Court will consider at that time whether a proper foundation has been laid.

Second, Plaintiff argues that F.R.E. 1002 prohibits introduction of a transcript of a recording to prove its content. Indeed, Rule 1002 requires the original recording to prove its content, unless other rules or federal statutes permit otherwise. Here, there is no argument that use of the transcript in lieu of the recording would be permitted by other rule or statute. Hence, the best evidence rule applies.

Third, Plaintiff argues that the content of the recording is inadmissible hearsay. The conversation is between Brian Howarth, the decedent whose estate is a party, and his wife Kathleen, who is the personal representative of the estate and also a party in her individual capacity. Hence, the contents of the conversation are statements of a party opponent. The objection as to hearsay applies only if the statements are offered to prove the truth of the matter asserted in the statement. Otherwise, the statements would be admissible, so long as they are

relevant and not otherwise subject to preclusion by other of the rules of evidence. However, it is rare that a verbal statement is considered anything other than an assertion, and the Court sees nothing in this record to suggest that any statement made in the telephone conversation, if offered in evidence, could be considered as anything other than an assertion.

Under F.R.E. 801(d)(2)(A), and assuming that the statements are offered for the truth of the matter, any statements made by Kathleen are not hearsay. Further, if Kathleen testifies, there may be statements in the recorded conversation which are not hearsay under F.R.E. 801(d)(1). The former is proper for direct examination; the latter for cross examination.

Finally, the Plaintiffs argue that the conversation between Brian and Kathleen contains crude and rough language, and that allowing the jury to learn of such language would be prejudicial to Mrs. Howarth, might offend certain jurors, and therefore should be precluded under F.R.E. 403. Limiting Defendant's counsel to examining Kathleen about her memory of the conversation, contend Plaintiffs, would protect against such potential indelicacies.

Even if the language is "rough" and "sprinkled with obscenities," that context is not a sufficient reason to preclude use of the conversation. However, any use of the conversation must be made through the use of the recording, and the Court is persuaded that use of the transcript – whether described as for the "ease" of the jury or as a "listening aid" is not justified here. The transcript contains dozens of indications that the conversation is "unintelligible," but does also contains verbatim transcriptions of the language which some might say is not suitable for polite company. The net effect is that the transcript is a distraction, not an aid, to the original recording, and it is also potentially unmoored from its relevance because of the references to "unintelligible" content, while at the same time containing the written warts of the spoken

conversation. On balance, the Court is persuaded that the transcript is not admissible in any intact form, as a stand-alone exhibit. However, the Court will permit its use, on a proper showing, solely for impeachment or to refresh recollection.

7. <u>Motion No. 7: Brian Howarth's Criminal History</u>

The Court is persuaded that the particulars of the fact of a conviction and sentence in the State of Colorado, as to which a term of supervision had not been completed and as to which Mr. Howarth's potential future incarceration was implicated by his present circumstances in Idaho, are *not* relevant to the issues to be decided by the jury. The Court notes that Plaintiffs have said that they do not intend to seek damages related to the time period during which Mr. Howarth was believed to potentially be at risk of being ordered into custody and incarcerated in Colorado, and therefore Plaintiffs contend there is no relevance to that criminal history. More fundamentally, the nature of such evidence is that it inescapably would be to discredit the contributions that Mr. Howarth might have made to the marital community, and the quality and extent of his companionship and support to Mrs. Howarth. Yet, if he were alive, such evidence would not be permitted as it would be prohibited by F.R.E. 404(b). The Court is also persuaded that such evidence also implicates and invokes F.R.E. 403. Accordingly, the Court grants Plaintiffs' Motion in Limine No. 7.

Obviously, should Plaintiffs not follow through on their representation as to the time frame for which damages will be sought, then the Court will reconsider this particular ruling.

8. <u>Motion No. 8: Property Title to Residences in Bonners Ferry and Plains</u>

The Court is not persuaded that the nature of the title ownership in the residences in Bonners Ferry and Plains is an "inconsequential" detail. It is true that married couples can have

various reasons for holding ownership of real property in the name of one spouse, or of both spouses (and even then, in various forms), but the nature of such decisions is something that is relevant to the issues on which the jury will decide. The Defendant is entitled to probe, and argue, the relevance of why those decisions were made in the context of defending against the damage claims, and the Plaintiffs are entitled to challenge and contend otherwise. But the evidence does not create a risk of some unfair prejudice. Mrs. Howarth and her counsel can explain why the circumstances do not indicate some oddity in the marital relationship, if they believe that the jury may assume as much.

Plaintiffs' Motion in Limine No. 8 is, accordingly, denied.

9.      Motion No. 9: Amount of Settlement With Previously-Named Defendants

This motion is granted, subject to possible reconsideration if the proof at trial opens the door as to the subject.

10.     The Remaining Motions

Plaintiffs' remaining motions in limine will be addressed in a separate decision.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

## <u>ORDER</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant Gordon Luther

M.D.'s Motion in Limine (Dkt. 121) is GRANTED in part and DENIED in part, consistent with

the foregoing analysis.

**IT IS FURTHER ORDERED** that Plaintiffs' Motions in Limine (Dkt. 123) are

GRANTED in part and DENIED in part, consistent with the foregoing analysis. Plaintiffs'

Motions in Limine 9 and 10 remain pending and will be resolved in a separate decision.

DATED: May 28, 2018

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge