UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATHLEEN HOWARTH, as personal representative of the Estate of Brian Howarth; and KATHLEEN HOWARTH, individually,<br><br>Plaintiffs,<br>vs.<br><br>GORDON LUTHER, M.D., an Individual,<br><br>Defendants. | Case No. 2:14-CV-00312-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFFS' MOTIONS IN LIMINE (Dkt. 123)** |

Pending are those motions numbered 10 and 11 in Plaintiffs' Motions in Limine (Dkt. 123).[1] Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

**A.     Motion No. 10: Extrinsic Statement of Plaintiffs' Expert, Dr. Cummins**

Richard Cummins, M.D., is one of the Plaintiffs' expert witnesses. In this case, he will render opinions in support of Plaintiffs' theory of liability. It is a role he has often occupied, which by itself is not particularly unusual, but in one deposition of many in which he has testified he answered a rather standard question about the nature of the past work he had done in this manner:

> Q.     So would it be fair to say that perhaps as much as 80 to 90 percent of the cases you've done in the last 20 years have been on the plaintiff side?
> A.     I would say right off the bat, I'm a plaintiff whore probably 80 percent. That's of cases that I review, and that's just because that's where the action is at the start. And the defense seems to not come to play until a lot of stuff is sorted out.
> Q.     Did you use the word plaintiffs' whore?
> A.     I did.
> Q.     That's what I thought you said.

---

[1] Plaintiffs' first nine motions in limine were resolved in a prior decision, dated May 28, 2018 (Dkt. 137).

**MEMORANDUM DECISION AND ORDER RE: MOTIONS IN LIMINE – 1**

A. I mean, that seems to be the direction this line of questioning always heads towards.

Plaintiffs seek an order precluding Defendant from cross-examining Dr. Cummins regarding his "plaintiffs' whore" statement, arguing that Defendant can seek to pursue such a line of bias through other examination tied more directly to the nature of the work Dr. Cummins has done in other litigation, that to allow use of this particular statement would be cumulative, and that allowing use of the statement would "destroy the weight" of his testimony. Plaintiffs contend that allowing Defendant to introduce the statement would simply serve to "derive an emotional and inflammatory response from jurors," and that jurors "do not have the background and experience to be able to relate to the context in which the statement was made." *Mem. ISO Plfs.' Mots. in Limine*, 7–9 (Dkt. 123-1).

Defendant replies by pointing out that evidence of bias is relevant to his defense, and he argues that this particular bias evidence is particularly probative because the statement "goes directly to [Dr. Cummins's] perception of his role as an expert." As to the jurors' ability to consider such matters, Defendant says that such a statement is "precisely the sort of vernacular that is <u>more</u> straightforward, more easily understood, and more revealing to the layman." *Def.'s Resp. to Plfs.' Mots. in Limine* 3–4 (Dkt. 128).

The issue of whether an expert witness is less of an expert and more of a tradesman of testimony (regardless of which side of the case on which the expert may testify) is commonplace in malpractice cases. It is similarly commonplace for a party to seek to discredit the persuasiveness of an expert's testimony by highlighting how often he or she is called upon to opine on such matters, and how much he or she may be paid for doing so. Hence, such questions are often posed, nearly always parried by the witness, and – if some bruises upon credibility

potentially have landed – answers to the questions are often rehabilitated in follow-up questions from the party who has called the witness. None of that is new. But, it is rare to have an expert witness describe himself in as unvarnished a manner as Dr. Cummins did in the 2010 deposition at issue.

Perhaps Dr. Cummins was caught in a moment of pique or umbrage about having to answer questions on a regular basis about the nature of the work he does, and the nature of the parties on whose behalf he most frequently testified. (His answer may have reflected a bit of testiness about his perceptions of the inferences of such questions. That would be understandable, if one believed that his or her opinions would be the same regardless of who might be paying for the time involved in drawing such opinions.) But, perhaps Dr. Cummins was instead caught in a moment of unexpected candor, as Defendant would contend, that mirrored how he, himself, felt about the work he did.

Since 2009, Dr. Cummins has testified in over 53 cases, an average of nearly six cases a year. The fact of the number of such cases is a legitimate basis for an opposing party to explore the topic of bias, and Dr. Cummins' own characterization of his role is a proper part of that process if an opposing party chooses to explore it. No doubt the jury will consider the statement in a larger whole, as in the Court's experience the witness will seek to put his or her own context to the statement and the party offering the witness will seek to do the same. Likely, the statement is one which Dr. Cummins on reflection wishes he had not made. But he did so, and it is relevant. Made in his own words, the statement is not so unfairly prejudicial as to obviate any

probative value and the Court is certain that the jury can sort through the cross currents.[2]
Accordingly, Plaintiffs' Motion in Limine No. 10 is denied.

**B.     Motion No. 11: Expert Testimony From Troy Geyman, M.D., and Chuck Newhouse, M.D.**

Defendant has disclosed an intention to elicit expert testimony from three physicians. As to two of those – Dr. Troy German and Dr. Chuck Newhouse – no disclosures of the sort required by Rule 26(a)(2)(B) were made, apparently for the reason that neither of those physicians was "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Most commonly, in cases such as this, such physician witnesses are treating physicians who are experts, of course, in the nature of their medical duties, but who are not retained or employed to provide expert testimony; rather, such treating physicians ordinarily testify as to their knowledge of the case, drawn in a template that necessarily involves both fact and medicine because of the very nature of their connection to the case.

Such witnesses have a label of their own in the law – the "percipient" witness – but even as to percipient witnesses expected to provide expert testimony there must be a disclosure, under Rule 26(a)(2)(C). Specifically, the party intending to call such a witness must disclose:

**(i)**     the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
**(ii)**    a summary of the facts and opinions to which the witness is expected to testify.

---

[2] The Court has considered the ruling of Judge Candy W. Dale on the same question in a different case. *See Mem. ISO Plfs.' Mots. in Limine* 9 n.2 (Dkt. 123-1). In that case, she precluded questioning on the statement under F.R.E. 403, holding that the statement "diminishes respect for the legal process as a whole." This Court might well agree, if the statement were made by someone else (including counsel) about an expert witness. But the statement was made *by* the witness, and in this Court's view that fact makes the analysis qualitatively different.

**MEMORANDUM DECISION AND ORDER RE: MOTIONS IN LIMINE – 4**

There was no such disclosure by Defendant as to either Dr. Geyman or Dr. Newhouse. Therefore, Defendant cannot elicit expert opinion testimony from either such witness that strays from the what and why of each physician's own interactions with Brian Howarth. Questions on those latter topics are proper given their percipient witness status, and therefore they can be examined within the rough parameters of "what did you learn and observe, what did you do in treating Mr. Howarth, and why did you do what you did in treating Mr. Howarth?" However, they cannot be asked and cannot proffer testimony as to the what and why of other providers involved in his care, to include Dr. Luther. Nor can they be asked about or proffer testimony upon the applicable standard of care, or whether the standard of care had been met.

It is possible, of course, that questions directed to the what and the why of Dr. Geyman's treatment, and Dr. Newhouse's treatment, might be argued by counsel to the jury as supporting a particular position upon the standard of care issues – both as to what the standard of care might and as to whether it had been breached. However, those ultimate questions directed to either of these two witnesses is off-limits.

Accordingly, Plaintiffs' Motion in Limine No. 11 is granted in part, and denied in part, as described above.

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

\ \ \

## ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' Motions in Limine, contained in Docket No. 123, are DENIED as to Motion Number 10 and GRANTED IN PART AND DENIED IN PART as to Motion Number 11, consistent with the foregoing analysis.

DATED: May 30, 2018

_____
Honorable Ronald E. Bush
Chief U.S. Magistrate Judge